**KATE M. NEISWENDER**
**LAW OFFICE OF K.M. NEISWENDER**
**I.D. No. 133234**
Post Office Box 24617
Ventura, California 93002
voice: 805/649-5575
fax: 805/649-8188
**THOMAS FARNISH**
**LARRIMORE & FARNISH**
1800 JFK Boulevard, Ste. 500
Philadelphia, Pennsylvania 19103
**I.D. No.: 34646**
**Attorney for Plaintiff**
**AGRIZAP, INC.**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AGRIZAP, INC., a California corporation,** | ) | CASE NO. 04-CV-03925 RK |
| | ) | |
| | ) | **SECOND AMENDED** |
| Plaintiff, | ) | **COMPLAINT FOR VIOLATION** |
| | ) | **OF CALIFORNIA'S UNFAIR** |
| v. | ) | **BUSINESS PRACTICES LAWS;** |
| | ) | **FOR BREACH OF ORAL** |
| **WOODSTREAM CORPORATION**, a | ) | **CONTRACT; FOR** |
| Pennsylvania corporation, doing business as | ) | **INFRINGEMENT OF PATENT;** |
| VICTOR PEST CONTROL, and DOES 1 | ) | **FOR INTENTIONAL** |
| through 50, inclusive, | ) | **MISREPRESENTATION; AND** |
| | ) | **FOR TRADE DISPARAGEMENT** |
| | ) | |
| Defendants. | ) | |
| ________________________________________ | ) | **JURY TRIAL DEMANDED** |

PLAINTIFF AGRIZAP, INC. presents itself before this Court and alleges as follows:

**Jurisdiction**

1. This Court has jurisdiction over this action in that Plaintiff was formed and has its principal place of business in Ventura, California, within the Central District of the United States District Court, and Defendant Woodstream Corporation is a Pennsylvania corporation, with its principal place of business in Lititz, Pennsylvania, and doing a substantial business

throughout the state of California. The matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000.00).

2. In addition, this Court has jurisdiction under 28 U.S.C. §1338(a) in that this case arises under the Patent Laws of the United States.

3. Venue is proper in this District under 28 U.S.C. §1391.

**The Parties**

4. Plaintiff AGRIZAP, INC. is a California corporation, with its principal place of business in Ventura County, California (hereinafter referred to as "Agrizap"). On September 7, 1999, United States Letters Patent No. 5,949,636, were duly issued to Plaintiff on a product known as the "Rat Zapper," a humane rodent control device utilizing portable electricity to kill rodents when they enter a plastic cannister in which bait has been placed (hereinafter the "Patent"). Since that date, Plaintiff has been and is still the owner of those Letters Patent. As the owner of the Patent, Agrizap has the right to sue for past and present infringement of the Patent.

5. Defendant WOODSTREAM CORPORATION (hereinafter "Woodstream") is a Pennsylvania corporation, doing business as and selling products under the name "Victor," "Victor Pest," and "Victor Pest Control."

6. The true names or capacities, whether individual, corporate, associate or otherwise, of defendants Doe 1 through Doe 50 are unknown to Plaintiff who therefore sues them by such fictitious names. Plaintiff will seek leave of this court to amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and, based on such information and belief, alleges that each defendant named herein as a Doe is responsible for each and every obligation

hereinafter set forth.

7. Plaintiff is informed and believes and, based on such information and belief, alleges that each defendant named in this Complaint was at all times herein mentioned, and now is the agent and employee of each of the other defendants herein, and was at all such times acting within the course and scope of such agency and employment.

**The Relationship Between Agrizap and Woodstream**

8. Agrizap is in the business of manufacturing and selling a humane rodent control product known as the "Rat Zapper." Agrizap was formed in 1991, and, following research and development, began production, marketing and sales of electronic rodent control devices, eventually developing the Rat Zapper. Agrizap applied for a patent for the current version of the Rat Zapper in March of 1997, and began marketing and sales of the device shortly thereafter. The patent was issued September 7, 1999, and is held by Agrizap (U.S. Patent No. 5,949,636). The Rat Zapper is comprised of two basic parts: a plastic cannister with a metal plate at the bottom, and a circuit board that sends the electrical charge to the metal plate, killing the rodent. The patent- protected Rat Zapper has been, until Woodstream entered the market in 2003, the only electronic rodent control device on the market that utilizes flashlight battery power to exterminate rodents.

9. In 2000, Woodstream contacted Agrizap at Agrizap's Ventura, California, offices about entering into a marketing agreement concerning the Rat Zapper. Woodstream wanted exclusive rights to market the Rat Zapper, and wanted to market the Rat Zapper under its own "Victor" label. Woodstream developed a special written marketing plan, which it shared with Agrizap, in which Woodstream projected "one

million dollars" in Rat Zapper sales by 2003. The marketing plan emphasized Woodstream's existing name recognition (for the "Victor" label) in the rodent control market, and its ability to exploit its existing commercial relationships. However, Agrizap wanted to establish a working relationship with Woodstream before any discussions of exclusivity could proceed. Nevertheless, Agrizap was willing to deliver Rat Zappers to Woodstream with the "Victor" labels prominently displayed on the Agrizap Rat Zapper. After lengthy negotiations, an oral marketing agreement was established, whereby Agrizap would manufacture and deliver to Woodstream Rat Zapper units with Woodstream's requested labels. Under the agreement, Woodstream was not permitted to utilize Agrizap's distinctive frightened rat and red lightning bolt logo; only Woodstream's own "Victor" labels were to be used. Other than labeling, there was no difference between the units.

10. Woodstream received special pricing discounts from Agrizap, based on projected sales. Woodstream ordered thousands of Rat Zappers from Agrizap, with sales all over the United States, and specifically in the state of California. In both telephone and email communications, Agrizap further agreed to defer to Woodstream in marketing to several major retail hardware chains, because Woodstream argued that it was inappropriate for the two companies to be competing for the same major stores when they were selling the exact same product. This marketing and sales agreement continued from 2000 through 2003. Woodstream's <u>total</u> purchases of Rat Zappers for 2000 through 2003 amounted to approximately $225,000.00 in gross sales to Agrizap.

11. Before finalizing the details of the oral Marketing Agreement, Agrizap received information that Woodstream was attempting to analyze all of the electronic components of Agrizap's Rat Zapper, and was discussing manufacturing details with a third party manufacturer (whose identity was unknown to Agrizap). The third party manufacturer purportedly had an ongoing business relationship with Woodstream. Concerned about Woodstream's motives in this regard, Agrizap sent a letter via email on August 18, 2000, to Woodstream, asking for assurances from Woodstream that the Rat Zappers forwarded to one of Woodstream's "off shore" manufacturers would not compromise Agrizap. Agrizap specifically asked for assurances that Woodstream would not, directly or indirectly, attempt the cloning of Agrizap's product line.

12. In response, on August 25, 2000, a senior Vice President of Woodstream, Andy Woolworth, assured Agrizap that there was no intention to clone the product, and that they were merely trying to get "a feel" for the costing of the Rat Zapper. With these assurances in place, Agrizap continued to provide and sell Rat Zappers to Woodstream, with prominently affixed "Victor" labels. Because Woodstream is a much larger company than Agrizap, Agrizap believed Woodstream's representations that Woodstream was capable of placing the Rat Zapper into numerous retail outlets that were unavailable to Agrizap. In the hardware industry, it is common that a large company will offer to provide a "product line" to large retailers.

13. Woodstream began sales of the Rat Zapper in multiple retail outlets, including the addition of the Rat Zapper into various retail hardware warehouses, among them the Ace Hardware and True Value warehouses. These retail hardware warehouses are the providers of product for literally hundreds of small hardware stores. Woodstream

sold the Rat Zapper as a "Victor" product, and promoted it as a "Victor" product throughout its distribution network. In addition to marketing the product with Ace Hardware, True Value, and other retailers, Woodstream sold the Rat Zapper on its own internet site. The Rat Zapper was likewise designated as a "Victor" product on the Woodstream website, and sold for $74.99, despite the fact that it cost Woodstream only $20.50 plus a nominal shipping charge in its acquisition from Agrizap.

**Woodstream Begins To Produce And Sell Its Infringing Product**

14. In mid-2003, Agrizap discovered that Woodstream was producing and marketing a competing electronic mousetrap. It was discovered that the Victor Electronic Mousetrap (hereinafter "Victor Mousetrap") operated with what appeared to be identical electronics as the Agrizap Rat Zapper. A patent analysis revealed the Victor Mousetrap was infringing on the Rat Zapper patent. Agrizap contacted Woodstream, which denied there was any infringement, and refused to pull the product off the market. The letter sent by Woodstream to Agrizap included material misstatements of fact concerning the patent.

15. In early 2004, Agrizap discovered that Woodstream was manufacturing and marketing an electronic rat trap. A further analysis of the Victor Electronic Rat Trap (hereinafter "Victor RatTrap") showed that – like the Victor Mousetrap – it used nearly identical functioning electronics to the Rat Zapper and also was clearly an infringing product. Agrizap further discovered that Woodstream was substituting its Victor Rat Trap for Agrizap's Rat Zapper to the previously described retail hardware warehouses. Woodstream also brought its Victor Mousetraps and Victor Rat Traps to Orchard Supply Hardware ("OSH") as part of its overall product line. Agrizap is informed and believes

and based thereon alleges that Woodstream provided to OSH monetary incentives if it would carry the Victor Mousetrap and the Victor Rat Trap in lieu of the Rat Zapper, and Woodstream is currently substituting its competing Victor Mousetrap and Victor Rat Trap for the Rat Zapper, and eliminating the Rat Zapper from all of its retail customers.

16. Because of the Victor branding of the Agrizap Rat Zapper and because of Woodstream's newly-introduced electronic traps, confusion in the retail marketplace now exists, and such confusion will continue to grow. Both retailers and customers are unable to distinguish the newly-introduced Victor Mousetrap and Victor Rat Trap from the previously distributed Victor-branded Rat Zapper produced by Agrizap. If Woodstream is allowed to continue the production, sale and substitution of its Victor Mousetrap and Victor Rat Trap in place of the Rat Zapper in the retail marketplace, Woodstream will effectively undermine Agrizap's ability to market and sell its goods. Further, it will divert profits from Agrizap to Woodstream; it will impact Agrizap and its ability in the long term to improve its market share; and, it will generally damage Agrizap in its ability to conduct business in a cost-effective and profitable manner.

**FIRST CAUSE OF ACTION**

**(For Violation of California's Unfair Business Practices Laws, Business & Professions Code §§17000 *et seq* and Business & Professions Code §§17200 *et seq)***

17. Plaintiff realleges and incorporates herein by reference all the allegations of Paragraphs 1 through 16, inclusive, of this Complaint.

18. Under the Unfair Practices Act (Business & Professions Code §§17000 *et seq)*, Defendants herein are prohibited from engaging in any "unfair, dishonest, [or]

deceptive" practice, by which "fair and honest competition is destroyed or prevented." (Business & Prof. Code §17001). Further, under the California Unfair Competition Law (Business & Prof. Code §§17200 *et seq)*, Defendants are barred from taking any actions that are "unlawful, unfair or fraudulent" (Business & Prof. Code §17200). Plaintiff alleges that the actions detailed hereinabove were unfair, dishonest, deceptive, and fraudulent, and in violation of the letter and spirit of California unfair business practices laws, in that Woodstream and Does 1 through 50, inclusive, acted as follows:

(a) Woodstream induced Agrizap to enter into a marketing and sales agreement, in order to gain access to Agrizap's technology and trade secrets;

(b) Woodstream induced Agrizap into withholding marketing to certain major retail outlets, by claiming that Woodstream would market, sell, and distribute Agrizap's Rat Zappers in those markets;

(c) Before the parties had finalized the details of the marketing and sales agreement, Woodstream had already shipped the Rat Zapper to an unknown "offshore" manufacturer to determine how to "clone" the Rat Zapper, and to determine how much it would cost;

(d) Woodstream then began selling the Rat Zapper under its own "Victor" label, in order to gain market share without having to invent, produce, manufacture and test a new product of its own;

(e) After confirming that a market existed for the Rat Zapper, and after gaining credibility in the market through the Agrizap product, and after the market was established, Woodstream then began producing its cloned

electronic rodent control devices;

(f) As soon as production of Woodstream's own units was established, it began to substitute its own Victor Mousetrap and Victor Rat Trap for Agrizap's Rat Zapper, Woodstream then began to undermine Agrizap marketing and sales in the large retail environment, selling in California, as well as across the United States.

19. The actions of Woodstream in regard to Agrizap and the Rat Zapper were intentional and deliberate. Agrizap is informed and believes and based thereon alleges that when Woodstream entered into the agreement with Agrizap, Woodstream fully intended to obtain Agrizap's product and its trade secrets, and then substitute its own infringing product for Agrizap's Rat Zapper, in order to "corner" the market.

20. Woodstream took other and further actions in violation of Business & Professions Code §§17000 through 17210, which actions will be proven at time of trial.

21. Plaintiff has been damaged in a sum to be proven at time of trial, which damages must be trebled as allowed under Business & Prof. Code §17082. In addition, Agrizap seeks an injunction as allowed under Business & Prof. Code §17070, restraining Woodstream against any further actions taken to promote, market and sell its Victor Mousetrap and Victor Rat Trap, which traps were created, produced and marketed using confidential information from Agrizap, and in violation of the Business & Professions Code.

22. Business & Prof. Code §17082 allows for recovery of Plaintiff's reasonable attorneys fees. Plaintiff has in fact engaged an attorney to prosecute this matter, and will

seek recovery of fees incurred at time of trial.

23. Under Business & Prof. Code §17203, Plaintiff may seek restitution of money lost due to the Defendants' actions. Plaintiff will seek such restitution in addition to any damages available to it under Business & Professions Code §17082.

**SECOND CAUSE OF ACTION**

**(For Breach of Oral Contract By Agrizap Against Woodstream)**

24. Plaintiff realleges and incorporates herein by reference all allegations contained in Paragraphs 1 through 23, inclusive.

25. Woodstream made representations to Agrizap, which prompted Agrizap to allow Woodstream to brand and market the Rat Zapper under its own "Victor" label, to induce Agrizap to pull out of certain retail markets, and to enter into a comprehensive marketing agreement. Part of the consideration that induced Agrizap to enter into the contract was Woodstream's assurances that it would act ethically. In addition, included in the contract was a covenant of good faith and fair dealing, which is inherent in every contract in California.

26. Woodstream thereinafter utilized Agrizap technology and trade secrets to establish the "Victor" labeled Rat Zapper in numerous retail markets, some of which markets had been surrendered by Agrizap as part of its marketing agreement with Woodstream. Once the "Victor" label Rat Zapper was clearly established, with a good reputation, then Woodstream created its own electronic Victor Mousetrap and Victor Rat Trap, and substituted its products for the Rat Zapper, all the while using Agrizap's trade secrets, in violation of the marketing agreement between the parties.

27. Agrizap performed all of the duties it was contractually obligated to perform, except those duties it was excused from performing due to the actions of Woodstream.

28. Due to the actions of Woodstream, Agrizap has been damaged in its reputation, goodwill, lost profits and other damages to be proven at time of trial, but significantly in excess of the $75,000.00 statutory threshold. In addition, Agrizap seeks an injunction, restraining Woodstream against any further actions taken to promote, market and sell its Victor Mousetrap and Victor Rat Trap, which electronic traps were created, produced and marketed using Agrizap's trade secrets.

**<u>THIRD CAUSE OF ACTION</u>**

**(For Infringement of the Agrizap Patent)**

29. Plaintiff realleges and incorporates herein by reference all the allegations of Paragraphs 1 through 28, inclusive, of this Complaint.

30. When Agrizap first discovered that Woodstream was selling the infringing electronic Victor Mousetrap, it sent a letter to Woodstream, asking for an immediate cessation of sales of the Victor Mousetrap. Woodstream's counsel sent back a comprehensive letter within days, contending the Agrizap patent had not been infringed, and explaining Woodstream's modifications to the Agrizap patent that allegedly allowed Woodstream to circumvent Agrizap's patent protections. However, in that letter were material misstatements of fact and law concerning the electronics contained in Woodstream's Victor Mousetrap. Because Woodstream's response was so swift and comprehensive, Agrizap contends that Woodstream was waiting for the Agrizap

objections. In fact, from the totality of the circumstances, it appears clear that Woodstream had set up the interruption of Agrizap's market and customer base; had violated the marketing and sales agreement; had induced Agrizap to pull out of certain major retail outlets; had over-priced the Rat Zapper and had committed other actions alleged herein, all in order to create the best possible introduction into the market of the infringing Woodstream products.

31. Woodstream is and has been fully aware of the patent on the Rat Zapper. Each Rat Zapper unit, including those shipped to Woodstream using the "Victor" label, are clearly marked with the U.S. Patent number, as required by statute. In addition, between 2000 and the present, Woodstream representatives were well informed by Agrizap of the existence of the patent.

32. Despite the patent on the Rat Zapper and Woodstream's knowledge of its existence, Woodstream refuses to stop production of its Victor Mousetrap and Victor Rat Trap, which traps infringe on the Agrizap patent. As a consequence of Woodstream's infringement, Agrizap has suffered, and will continue to suffer, harm and injury, including significant monetary damage.

33. Woodstream's violation of the patent was willful and deliberate, was pre-meditated and planned over the course of several years. Because Woodstream's actions were and are willful violations of the patent, Plaintiff's actual damages must be trebled, pursuant to the United States Code.

34. Plaintiff demands a preliminary and permanent injunction against the continued infringement by Woodstream, an accounting for damages, and an assessment of

interest and costs against the defendants.

**FOURTH CAUSE OF ACTION**

**(Intentional Misrepresenation Against All Defendants)**

35. Plaintiff realleges and incorporates herein by reference all the allegations of Paragraphs 1 through 34, inclusive, of this Complaint.

36. Defendants, and each of them, made affirmative representations to Agrizap, with the intention to induce Agrizap to enter into a marketing and sales agreement for the purchase and sale of Rat Zappers.

37. These representations were false and fraudulent, as follows:

(a) Woodstream representatives, specifically a company vice president, stated to Agrizap that he was sending the Rat Zapper to Woodstream's "offshore" manufacturer not to clone the Rat Zapper, but to get a better idea of its costing and production challenges. In truth, Woodstream was creating its competing and infringing product.

(b) Woodstream representatives, including officers of the company, stated to Agrizap that they wanted to promote the Rat Zapper, when in truth they planned on test-marketing the Rat Zapper with the intention of selling Woodstream's own infringing product as soon as a market was established;

(c) Woodstream representatives, including officers of the company, stated to Agrizap that they wanted to sell as many Rat Zappers as possible, when in truth they were was preparing the market for Woodstream's own infringing product;

(d) Woodstream representatives, including officers of the company, stated to Agrizap that they were acting in good faith and with an intent to promote the Rat Zapper, when in truth they were acting to undermine Agrizap's market position; and

(e) Woodstream representatives, specifically Rick Ilstrup, stated to Agrizap on February 20, 2001 that they wanted Agrizap to pull out of certain retail outlets, because there was no need for Agrizap to compete with itself, as Woodstream would sell to those markets. In truth, Woodstream was unfairly cutting Agrizap out of the retail markets and positioning itself to do a "bait and switch," substituting its own infringing product for the Rat Zapper in the same outlets, covertly using the Rat Zapper marketing materials and the Rat Zapper "SKU" as designated by the retailers.

In addition to these misstatements and misrepresentations, when Agrizap confronted Woodstream with the fact of its infringement, Woodstream attorneys stated in writing in a letter to Agrizap that the Victor Mousetrap was not infringing, and they further misstated the nature of the electronics used by the Victor Mousetrap, in an attempt to hide the fact that Woodstream was infringing on the Rat Zapper patent.

38. Agrizap reasonably relied on misrepresentations made by Woodstream to induce Agrizap into entering into the marketing and sales agreement. If Agrizap had known the truth, that Woodstream was using Agrizap resources in order to test-market its own electronic traps, Agrizap would never have entered into any contract or cooperative arrangement with Woodstream.

39. As a direct and proximate result of the misrepresentations made by Woodstream to Agrizap, Agrizap has been damaged in an amount to be proven at time of trial, but which damages are estimated to be significantly in excess of the $75,000.00 statutory threshold.

40. Because Defendants' actions were despicable, oppressive, heinous, dishonest and fraudulent, Plaintiff is entitled to damages in an amount designed to punish the Defendants, and to make an example of them.

**FIFTH CAUSE OF ACTION**

**(Trade Disparagement Against All Defendants)**

41. Plaintiff realleges and incorporates herein by reference all the allegations of Paragraphs 1 through 40, inclusive, of this Complaint.

42. Defendants, and each of them, have made and continue to make statements about Plaintiff and Plaintiff's business that are untrue. These statements include, but are not limited to, representations by Woodstream's employees and agents to retailers that Agrizap was out of business; or that the RatZapper was no longer being manufactured; or that Agrizap had been purchased by Woodstream; or that the Woodstream electronic rodent traps were the newest edition or substituted product for the RatZapper. In addition, various national hardware retailers have been encouraged to substitute the Victor electronic rat trap in place of the RatZapper; however, they are using the same SKU, photograph, and description of the RatZapper, but Victor is supplying to the individual retail outlets the electronic Victor product in place of the RatZapper.

43. The actions of Woodstream were intentional and deliberate, and designed to

mislead the public, consumers and retailers, in order to promote and substitute Woodstream's own infringing product for Agrizap's Rat Zapper.

44. As a direct result of the Defendants' actions, Plaintiff has been damaged in a sum to be proven at time of trial.

**Damages On All Causes of Action**

45. By reason of Defendants' acts as alleged herein, Plaintiff has and will suffer damage to its business, reputation and goodwill, and the loss of sales and profits Plaintiff would have made but for the acts of the Defendants.

46. Defendants threaten to continue to do the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to Plaintiff's irreparable harm. It would be difficult to ascertain the amount of compensation which could afford Plaintiff adequate relief for such continuing acts, and a multiplicity of judicial proceedings would be required. Plaintiff's remedy at law is not entirely adequate to compensate it for injuries threatened. Plaintiff specifically requests that this court enjoin Woodstream from marketing and selling its Victor Mousetrap and Victor Rat Trap, which traps were created and manufactured in violation of law. Such an injunction is allowed under the California Unfair Practices Act and under U.S. Patent law.

////

**WHEREFORE, PLAINTIFF PRAYS RELIEF AS FOLLOWS:**

(1) That this court grant an injunction pursuant to California law, enjoining and restraining defendants and their agents, servants and employees from producing,

manufacturing, marketing, and selling its Victor Mousetraps and Victor Rat Traps, as a violation of California's Unfair Business Practices laws, including Business & Professions Code §§17000 and §§17200;

(2) That this court grant an injunction pursuant to the powers granted it under the United States Code, enjoining and restraining defendants and its agents, servants and employees from producing, manufacturing, marketing, selling or otherwise infringing, directly or indirectly, on Agrizap's Letters Patent for the product known as the "Rat Zapper;"

(3) That this court, pursuant to the powers granted it under the United States Code, order that all Woodstream electronic Victor Mousetraps and Victor Rat Traps be delivered up and destroyed;

(4) That Defendants be required to account to Plaintiff for all damages sustained by Plaintiff for any and all income derived by Defendants from the sale of all infringing goods, and for all damages sustained by Plaintiff by reason of said acts of infringement and unfair business practices, as complained of herein;

(5) That this court award to Plaintiff treble the amount of its actual damages for infringement, as allowed under 35 U.S.C. §285 and Business & Professions Code §17082;

(6) That this court award Plaintiff damages for the Defendants' fraudulent misrepresentations in an amount designed to punish the Defendants, and make an example of them;

(7) That this court award Plaintiff damages for the Defendants' acts of trade disparagement;

(8) That costs of suit be awarded to Plaintiff;

(9) That Plaintiff be awarded its reasonable attorneys' fees, as allowed under Business & Professions Code §17082;

(10) Alternatively, that this court determine that this is an exceptional case, and that attorneys' fees be awarded to Plaintiff under U.S. Patent law; and

(11) That this court grant such other and further relief as it shall deem just.

Dated: March 18, 2005

/s/ Kate M. Neiswender
KATE M. NEISWENDER, Attorney
For Plaintiff AGRIZAP, INC.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff AGRIZAP, INC., hereby demands a Jury Trial in this matter.

Dated: March 18, 2005

/s/ Kate M. Neiswender
KATE M. NEISWENDER, Attorney
For Plaintiff AGRIZAP, INC.